*Tagged Opinion*



**ORDERED in the Southern District of Florida on April 1, 2021.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:

ESTRATEGIAS EN VALORES, S.A., et al.
TATIANA QUINTERO BAIZ,                          CASE NO. 17-16559-LMI
                                                Chapter 15

    Debtors in a Foreign Proceeding.            ***Jointly Administered***
_____/

LUIS FERNANDO ALVARADO ORTIZ,                   CASE NO. 20-01222-LMI
As foreign representative and
Colombian liquidator,

        Plaintiff,

v.

DEUTSCHE BANK AG,

        Defendant.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S
<u>MOTION TO DISMISS THE ADVERSARY COMPLAINT (ECF #15)</u>**

THIS MATTER came before me on September 29, 2020 (the "Hearing") on the Motion to Dismiss the Adversary Complaint (the "Motion to Dismiss") (ECF #15) filed by the Defendant, Deutsche Bank AG ("Defendant" or "Deutsche Bank"). I have considered the Motion to Dismiss, the Adversary Complaint ("Complaint") (ECF #1) filed by Plaintiff, Luis Fernando Alvarado Ortiz, as foreign representative and Colombian liquidator (the "Plaintiff"), the response filed by the Plaintiff to the Motion to Dismiss (ECF #47), the reply filed by Defendant (ECF #50), the arguments of counsel at the Hearing, and the submission of competing proposed forms of order on the Motion to Dismiss. For the reasons more fully set forth herein, the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND[1]

The Plaintiff is the authorized foreign representative and Colombian court-appointed liquidator of Estrategias en Valores, S.A. ("Estraval"), its related entities, and key management. (Compl. ¶26.) On June 9, 2017, Plaintiff, through his Florida counsel, filed a Petition for Recognition of Foreign Main Proceeding, pursuant to Sections 1515 and 1517 of the Bankruptcy Code. (Main Case ECF

---

[1] Set forth here are the facts alleged in the Complaint, which, for purposes of the Motion to Dismiss, are accepted as true, and construed in the light most favorable to the Plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

#27.[2]) The Order of Recognition was entered on July 6, 2017. (Main Case ECF #59.)

The Defendant, Deutsche Bank is a multinational investment bank and financial services company headquartered in Frankfurt, Germany. Deutsche Bank has branches in London, United Kingdom, as well as in the United States, including, but not limited to, New York, New York and Miami, Florida.

The Plaintiff filed the Complaint on May 15, 2020.  The Complaint asserts a total of seven (7) counts, largely grouped into three categories. The first category of claims asserted against Deutsche Bank are claims based on aiding and abetting liability (Counts I, II, III, and VI). In these counts, Plaintiff alleges that Deutsche Bank: (1) aided and abetted Estraval in carrying out its fraudulent scheme, (2) aided and abetted Estraval in breaching its fiduciary duties, and (3) aided and abetted Estraval in its conversion of creditors' money. The second category of claims consists of the Plaintiff's fraudulent conveyance claim against Deutsche Bank under Colombian law (Count V), which seeks to undo payments to Deutsche Bank and transfers of "libranzas" from Estraval to a BBVA trust allegedly created for the benefit of Deutsche Bank.  The third category of claims are equitable claims of unjust enrichment (Count IV) and disgorgement (Count VII). Plaintiff seeks an accounting of all transfers that Deutsche Bank received from Estraval and disgorgement of all alleged ill-gotten gains, alleged illegal losses avoided, and any distributions on account of its claims that Deutsche Bank received from the Estraval liquidation proceedings.

---

[2] The Main Case No. is 17-16559-BKC-LMI. Any references to ECF Documents in the Main Case will state "Main Case" before the ECF #.

The Complaint alleges that Estraval's principals, Cesar Fernando Mondragon Vasquez ("Mr. Mondragon") and Juan Carlos Bastidas ("Mr. Bastidas"), incorporated the business in 2000. (Compl. ¶8.) Estraval bought, sold, and securitized *pagaré libranzas* ("*libranzas*"), which are consumer loans made to individuals secured by their paychecks. (*Id.* ¶¶9-11.) The Plaintiff alleges that Mr. Mondragon operated Estraval as a Ponzi scheme, selling falsified, duplicated, and valueless *libranzas*. (*Id.* ¶¶12, 23.)

Because Estraval needed more capital to continue its fraud, Mr. Mondragon engaged non-party StormHarbour Securities LLP ("StormHarbour") to locate investors. (*Id.* ¶¶34, 39.) In early 2014, StormHarbour approached the Defendant. (*Id.* ¶48.) Through a blend of corporate financing and asset-backed lending, collateralized with payments from *libranzas*, the Defendant invested $25 million in Estraval in July 2015 (the "Estraval Transaction"). (*Id.* ¶¶52, 102.)

The Complaint alleges that Colombia's *Superintendencia de Sociedades de Colombia* (the "*Superintendency*"), the regulatory agency of the Colombian government that oversees corporations, began to investigate Mr. Mondragon and Estraval. By March 2015, four months before Defendant's investment, the *Superintendency* concluded its investigation and determined that Estraval misrepresented its liquidity. (*Id.* ¶¶13-14.) The *Superintendency* then placed Estraval into receivership. (*Id.* ¶14.) After more than a year in receivership, the *Superintendency* commenced liquidation proceedings (the "Colombia Proceeding") in May 2016. (*Id.* ¶20.) The *Superintendency* then appointed the Plaintiff to oversee the Colombia Proceeding. (*Id.* ¶27.) The Colombia Proceeding

revealed that Estraval was a Ponzi scheme and Mr. Mondragon had perpetuated a financial fraud on the Colombian public. (*Id.* ¶¶10-11, 23-24.)

As liquidator in the Colombia Proceeding, the Plaintiff asserts that he has "plenary authority" to obtain control of Estraval's assets and that he "represents the creditors of Estraval, Mondragon, and Quintero in Colombia." (*Id.* ¶¶28, 63.) The Complaint challenges the Defendant's due diligence into Estraval and Mr. Mondragon, particularly what the Plaintiff characterizes as Defendant's disregard of "red flags." (*Id.* ¶¶40-46.) Under the Plaintiff's theory, the Defendant "knowingly or recklessly disregarded the warning signs," when it closed the Estraval Transaction. (*See id.* ¶¶50-59.) Ultimately, Plaintiff contends, the Defendant's investment provided Estraval with the funding to continue its fraud for an additional year. (*Id.* ¶61.) The Complaint alleges, "but for" the Defendant's actions, "Estraval's fraudulent scheme would have collapsed due to lack of funding much sooner." (*Id.* ¶59; *see also id.* ¶¶71, 80, 87.) According to the Complaint, Defendant is the direct and proximate cause of Estraval's breach of fiduciary duties to its creditors. (*Id.* ¶81.)

## THE MOTION TO DISMISS

The Defendant moves to dismiss the Complaint. First, the Defendant asserts that this Court lacks personal jurisdiction over the Defendant, and therefore all counts of the Complaint must be dismissed. Second, the Defendant argues that all counts other than Count V should be dismissed for a number of reasons including that the Plaintiff has no authority under Colombian law to bring claims as a representative, and on behalf, of Estraval's creditors and that the Plaintiff lacks standing to bring such claims because the Complaint cannot

plausibly allege a causal connection between the alleged injury and Defendant's conduct. Finally, the Defendant argues that Counts I-III and VI (the aiding and abetting claims), Count IV (unjust enrichment), and Count VII (disgorgement) fail under either Colombian or New York law.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff "must plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1324 (11th Cir. 2012). The court must disregard all those allegations that are mere conclusions, and then determine whether the "well-pleaded factual allegations", assuming they are true, "plausibly give rise to an entitlement for relief." *Id.* at 1325 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Thus, a motion to dismiss based upon a failure to state a claim tests the sufficiency and plausibility of the complaint, taking those well-pleaded allegations as true, in the light most favorable to the plaintiff, with all inferences drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

In ruling on a motion to dismiss, the court is generally confined to the four corners of the complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). One notable exception is if foreign law is at issue; if foreign law is at issue, the court may consider "any relevant material or source,

including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.[3] Each party has submitted affidavits on Colombian law, translations of various pronouncements by the *Superintendency*, and relevant Colombian statutes.

## ANALYSIS

## I. Plaintiff Has Made a *Prima Facie* Case That This Court Has Personal Jurisdiction Over Deutsche Bank

The Court will address first the issue of personal jurisdiction. The Defendant contends that the Court lacks personal jurisdiction over it. The Court disagrees. "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

Because the Defendant has executed a waiver of service (ECF #8), personal jurisdiction exists so long as "the exercise of jurisdiction is consistent with the Constitution and law of the United States." Fed. R. Bankr. P. 7004(f). "[P]ersonal jurisdiction under Fed. R. Bankr. P. 7004(f) meets constitutional concerns based on the defendant's contacts with the United States, rather than the state where the bankruptcy court is located." *In re Marathe*, 459 B.R. 850, 855 (Bankr. M.D. Fla. 2011). The Complaint alleges certain facts supporting jurisdiction in the United States, and supporting evidence submitted by the Plaintiff demonstrates

---

[3] Fed. R. Civ. P. 44.1 is applicable to this adversary proceeding by virtue of Fed. R. Bankr. P. 9017.

that the Defendant chose New York law in certain agreements relating to the Estraval Transaction. (*See* Compl. ¶7; ECF #47-3.) Therefore, the Court finds that the Plaintiff has made a prima facie case of personal jurisdiction.

Accordingly, the Defendant's Motion to Dismiss on the grounds that the Court lacks personal jurisdiction over the Defendant is DENIED.

## II.   Authority, Standing, and Plausibility

### A.   The Plaintiff Appears to Have the Authority Under Colombian Law to Assert Certain Claims on Behalf of Estraval's Creditors

The Defendant argues that the Plaintiff lacks authority to bring the six claims alleged to be asserted on behalf of or as a representative of Estraval's creditors. The Court must determine the scope of the Plaintiff's authority under Colombian law. *See In re Massa Falida do Banco Cruzeiro do Sul S.A.*, 567 B.R. 212, 222 (Bankr. S.D. Fla. 2017) ("[T]he ability of the [p]laintiff to seek relief . . . rests . . . on the [p]laintiff's capacity as the Brazilian bankruptcy judicial administrator, and its rights and powers given to it under Brazilian law."). The issue here is whether a Colombian liquidator acts as a kind of collection agent – limited to suing to recover assets that belonged to Estraval – including apparently, litigation claims, and then distribute the liquidated assets to creditors, or whether a liquidator has broader authority to bring independent lawsuits so long as those lawsuits are filed for the benefit of recovering assets for all of Estraval's creditors, and are not direct claims that belong solely to the creditors of Estraval.[4]

---

[4] *See, e.g., In re Bernard L. Madoff Inv. Securities LLC.*, 721 F.3d 54, 57-58 (2d Cir. 2013); *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 985-87 (11th Cir. 1990).

The Defendant relies on the declarations of Maria I. Romero de la Torre for relevant Colombian law. (*See* Decl. of Maria I. Romero de la Torre (ECF #15-1) (the "Romero Decl."); Suppl. Decl. of Maria I. Romero de la Torre (ECF #50-1) (the "Romero Suppl. Decl.")). According to the Defendant, the Plaintiff's authority under Colombian law is limited to serving as a legal representative of Estraval, not a legal representative of its creditors. (*See* Romero Decl. ¶18; Romero Suppl. Decl. ¶9.) In his role as legal representative of Estraval, under Article 48.1 of Law 1116 of 2006, the Plaintiff has the duty, among other things, to ensure creditors' claims are paid to the extent possible before discharging Estraval's debts. (Romero Suppl. Decl. ¶9.) Under Articles 74 and 75 of Law 1116 of 2006, the Plaintiff has the duty to sue people or companies that owe money (or other goods) to Estraval to recover assets; the liquidator "does not bring additional claims on behalf of the insolvent company's creditors." (*Id.* ¶10.) Thus, claims brought on behalf of Estraval do not include the claims of Estraval's creditors, even though they may ultimately benefit victims and creditors. (*Id.*) Accordingly, the Defendant argues, because the Plaintiff purports to represent creditors in this adversary proceeding, the Plaintiff lacks authority under Colombian law to bring the claims set forth in the Amended Complaint (other than the fraudulent conveyance claim in Count V). (*See* Def.'s Reply at 3 (ECF #50)).

In response, the Plaintiff has submitted the Legal Opinion of Juan Carlos Esguerra Portocarrero (ECF #47-1) (the "Esguerra Opinion"). The Esguerra Opinion states the applicable regulations "grant the liquidator the capacity and power to pursue all kind of actions on behalf of the interests of those affected by the pyramid scheme." (Esguerra Opinion at 7.) Mr. Esguerra acknowledges,

however, that "a liquidator does not legally represent the people affected by the pyramid scheme or the creditors of the intervened, but is obliged to, and entitled to, initiate actions to obtain assets to compensate those affected by the pyramid scheme, not to the benefit of the intervened corporation, but in favor of the above-mentioned creditors." (*Id.* at 6.)

Nonetheless, Mr. Esguerra's ultimate conclusion is "the liquidator has the authority and the power to conduct actions on behalf of the interests of the creditors and those affected by the pyramid scheme, if said actions intend to ensure the correspondent payment and reimbursement. Hence, Mr. Luis F. Alvarado, acting as liquidator of Estraval, has the authority to file civil and criminal claims against wrongdoers that contributed to Estraval's pyramid scheme, and has the authority and power to bring the Adversary Complaint against [Deutsche Bank]." (*Id.* at 8.)

The Court finds that the Esguerra Opinion is more persuasive than the Romero declarations, and that therefore it appears that the Plaintiff has authority to bring claims so long as those claims are cognizable, but only those claims that benefit *all* creditors, not just a subset of creditors.[5] Assuming the Esguerra Opinion is consistent with the Court's understanding, the Court finds that the Plaintiff does not have authority to bring Count III of the Complaint (conversion) or Count IV of the Complaint (unjust enrichment), which counts, at

---

[5] However, at oral argument Plaintiff's counsel conceded that if the Court holds that the Plaintiff does not have authority to bring direct claims of creditors, then only Count V and probably Count III would survive the Motion to Dismiss. (*See* Tr. of 9/29/2020 Hearing at 52-53 (ECF #56)). This statement creates some ambiguity regarding exactly what did Mr. Esguerra opine.

oral argument, Plaintiff's counsel acknowledged, would not apply to *all* creditors. (*See* Tr. of 9/29/2020 Hearing at 29, 32, 37-38 (ECF #56)).

Thus, the Court finds that the Plaintiff apparently has the authority under Colombian law to bring Counts I, II, V, and VI of the Complaint and the Motion to Dismiss on this basis is DENIED.[6] But, the Motion to Dismiss is GRANTED *with prejudice* with respect to Counts III and IV on the basis of lack of authority.

### B.    The Plaintiff Cannot Plausibly Trace the Injury of Estraval's Creditors to the Defendant's Acts

The Plaintiff has failed to establish a claim under Counts I-III, IV or VI because first, the Plaintiff, even if he is authorized to act on behalf of individual creditors, has failed to adequately allege that he has constitutional standing to bring these claims. Second, the allegations that the Defendant's described acts are the cause of the creditor's injuries, even if sufficient to satisfy constitutional standing, not only are not plausible, but they are also conclusory and speculative.

### i.    *Failure to Adequately Plead Standing*

The Plaintiff contends that the allegations of paragraphs 2, 59, 61, 71, 79, and 87 of the Complaint plausibly and adequately describe the injuries as "fairly traceable" to the Defendant's alleged wrongdoing. (*See* Pl.'s Resp. at 5 (ECF #47)). Further, the Plaintiff argues that traceability and causation can be satisfied through allegations of indirect injury and that the injuries were foreseeable. (*Id.*)

---

[6] The Plaintiff did not dispute that there is no cause of action for disgorgement (Count VII of the Complaint). *See infra* Section V.

The Defendant asserts that the Plaintiff cannot establish traceability and the Complaint, at most, alleges that the Defendant made a risky investment. The Defendant argues that the Complaint implausibly asks the Court to accept that each of Estraval's 4,600 victims, even those that invested in Estraval prior to Deutsche Bank's involvement, were injured by the Defendant's investment.

Courts evaluate a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1), as incorporated by Fed. R. Bankr. P. 7012(b)(1). *Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003). Standing is analyzed under a two-component framework, consisting of a constitutional requirement and prudential considerations. *See E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984-85 (11th Cir. 1990). To fulfill the constitutional requirement, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l., Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125 (2014). To fulfill the prudential requirement the party must demonstrate that the party is asserting individual rights rather than third party rights, that the injury is peculiar to the litigant rather than a general grievance, and that the injury falls within the zone of interests protected by the law invoked. *See In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 250 (Bankr. N.D. Fla. 2003).

To satisfy constitutional standing at the pleading stage, the Plaintiff must establish that the injury to the victims of Estraval's fraud is "fairly traceable" to the Defendant's purported wrongful conduct. *See Lexmark,* 572 U.S. at 125. Thus, for purposes of showing that the Plaintiff has standing to bring these

claims, the Plaintiff must plead sufficient facts, which, if accepted as true, demonstrate that it is plausible that the injury alleged is one that "fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party [for example, Mr. Mondragon, Mr. Bastidas, and others] not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41-42 (1976); *Trichell v. Midland Credit Management, Inc.,* 964 F.3d 990, 996 (11th Cir. 2020). "Fairly traceable" does not require a showing of proximate cause for purposes of establishing standing, and the allegations of injury can be indirect. *Resnick,* 693 F.3d at 1324 (citing *Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1273 (11th Cir. 2003)).

Cutting through a great deal of extraneous allegations[7], the Complaint alleges that the Defendant's capital infusion into Estraval is the wrongful act (wrongful, apparently, because the Defendant did not perform proper due diligence and/or willfully ignored warning signs of fraud, a fraud that, allegedly, Deutsche Bank knew of, or should have known of) but for which, "Estraval's fraudulent scheme would have collapsed due to lack of funding much sooner." (Compl. ¶¶59, 114.) That "infusion of capital allowed Estraval to continue perpetrating its fraudulent scheme." (*Id.* ¶61.) "[B]ut for Deutsche Bank's actions, Estraval's fraudulent scheme would have collapsed for lack of funding much sooner." (*Id.* ¶71.) And that "[b]ut for Deutsche Bank's actions, [which, by reference relate back to the infusion of capital] Estraval would not have been

---

[7] The Court would suggest Plaintiff's counsel read *Barmapov v. Amuial,* 986 F.3d 1321 (11th Cir. 2021).

able to breach its fiduciary duty to creditors by engaging in the fraudulent scheme to repurchase its *libranzas*." (*Id.* ¶80.) The Complaint also alleges in some counts that somehow Deutsche Bank's alleged willful lack of due diligence, and its actual or constructive knowledge of what was happening, was the cause of the creditors' losses. (*See id.* ¶¶87, 110-13.)

Most of these allegations are conclusory and consequently are not entitled to the "assumption of truth." *Resnick,* 693 F.3d at 1325. But more importantly, even those more specific allegations, indeed, almost the entire Complaint, clearly illustrate that the cause of the losses to the creditors was the fraud perpetrated by Mr. Mondragon and his accessories. Any financial contribution by Deutsche Bank to that scheme was, at most, coincidental to the fraud, even if, as the Complaint alleges, Deutsche Bank knew that Estraval was engaged in fraudulent conduct. Moreover, the Complaint alleges that the influx of $25 million in December 2015 to this $220 million fraud is the "but for" cause of all the injuries suffered by the creditors. However, according to the Complaint, the Estraval Ponzi scheme had been ongoing since 2000, began to fall apart in 2012, and knowledge of the rampant fraud with *libranzas* was widely known by 2014. (Compl. ¶¶12, 32, and 40.) Moreover, the Complaint alleges that Estraval needed to raise $150 million to fund Mr. Mondragon's plans to keep his scheme going;[8] but, according to the Complaint, Deutsche Bank provided only approximately $25 million of the needed $150 million.[9]

---

[8] The broker, StormHarbour, according to the Complaint, agreed to raise between $250 million and $300 million, although, the Complaint alleges that amount was ultimately reduced to $150 million.

[9] The Complaint does not include information regarding whether and from whom the additional $125 million was raised.

At the Hearing, Plaintiff's counsel argued that the Complaint alleges that Deutsche Bank received "good *libranzas*" at the expense of innocent investors who did not. Counsel to Plaintiff suggested that "good *libranzas*" were taken by Mr. Mondragon and redirected to Deutsche Bank. However, that is not what the Complaint alleges. The Complaint alleges that Deutsche Bank acquired the "best-performing *libranzas*" (*Id.* ¶68), but there are no allegations regarding how or why this fact alone damaged other investors. Moreover, when asked *which* creditors' *libranzas* were redirected to Deutsche Bank, and what the value of the redirected *libranzas* were*,* Plaintiff's counsel conceded they have no idea . . . yet.[10]

The injuries to Estraval's creditors can be traced directly to Mr. Mondragon's actions, and not directly or even indirectly to the actions of the Defendant. Nothing in the Complaint connects the Defendant's investment to anything other than keeping Estraval afloat for an additional year, and that connection is merely conclusory. Those same allegations establish, however, that Mr. Mondragon orchestrated the Estraval fraud, injured Estraval's creditors, and, indeed, faced criminal prosecution because of his actions. (*See* Compl. ¶¶ 1, 11, 12, 15, 18-19.) All of that is independent of the Defendant's investment.

Further, there is nothing in the Complaint that alleges that any injuries are tied to Deutsche Bank's receipt of "good *libranzas*." And even if there were any such allegations, any injuries caused by Deutsche Bank are pure speculation; the Plaintiff does not know which creditors, if any, were allegedly

---

[10] Because Plaintiff's counsel concedes that these claims, if they exist, would not be claims of ALL Estraval creditors, the Plaintiff has no authority to bring such claims. *See supra* Section II.A; *See infra* Section IV.

injured by Deutsche Bank's receipt of the "good *libranzas*."  It is the exact "throw everything on the wall and see what sticks" style of pleading that was rejected by the Supreme Court in *Twombly* and *Iqbal.*

Thus, even if the Plaintiff *does* have the authority to bring these types of claims on behalf of creditors, the Complaint fails completely to adequately plead standing for purposes of invoking the Court's jurisdiction.

### ii.  *Failure to State a Cause of Action*

At the Hearing, Plaintiff's counsel acknowledged that the injuries suffered by the creditors was caused by Mr. Mondragon and his accessories. However, Plaintiff's counsel argued, because the claims against the Defendant are aiding and abetting claims, all the Plaintiff must allege is that the Defendant aided and abetted Mr. Mondragon in causing those injuries. However, there is no cause of action for aiding and abetting under the laws of Colombia,[11] so, any such argument, even if it were sound, is not relevant here.

Even if the Complaint did adequately plead sufficient facts regarding injury to establish standing, the Complaint, on its face, fails to allege sufficient facts, that are not conclusory, and that are not pure speculation, that plausibly allege that the Defendant's described actions, were the "direct and proximate" cause, the "but for" cause, of the injuries suffered by the Estraval creditors. There is nothing in the Complaint that plausibly supports an argument that Deutsche Bank's infusion in late 2015 of a fraction of the funds the Complaint alleges Estraval needed to continue its scheme is the cause of the losses that, according to the Complaint, started to accrue around 2012.

---

[11] *See infra* Section III.B.

The Court finds that the Plaintiff has failed to adequately plead that the Defendant's alleged wrongful conduct is fairly traceable to the injury suffered by Estraval's creditors. Moreover, the Plaintiff has failed to allege any plausible basis to sustain its claims that the injuries suffered by the Estraval creditors were caused, even in small part, by Deutsche Bank's alleged wrongful conduct. The Complaint is based entirely on unsupported speculation. Thus, the Motion to Dismiss is GRANTED and Counts I-II and VI are dismissed.[12]

## III.   **The Aiding and Abetting Claims**

Defendant contends that Plaintiff's aiding and abetting claims (Counts I-III and VI) fail to state a claim for relief and are subject to dismissal. The Court must first determine whether Colombia or New York law applies to each of these claims.[13]

### A.   **Colombian Law Applies Under the Restatement (Second) Conflict of Law's Significant Relationship Test**

The parties agree that Florida's choice of law rules should determine what jurisdiction applies. Previously, this Court has determined that the test to determine which law applies to aiding and abetting claims is provided by the Restatement (Second) Conflict of Laws §145. *See In re Massa Falida*, 567 B.R. at 226.

---

[12] To the extent that the Court had not already dismissed Counts III and IV with prejudice on the basis of lack of authority, those Counts would also be dismissed based on lack of standing and failure to state a cause of action.

[13] At the Hearing, the Plaintiff argued that the Court need not determine whether the law of Colombia or New York applies because of the presence of a false conflict. *See Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014) (explaining that "no conflict of laws exists when the asserted conflict is a false conflict" and that "[a] false conflict arises when (1) the laws of the different sovereigns are the same, [or] (2) the laws of the different sovereigns are different but produce the same outcome under the facts of the case."). However, the laws of Colombia and the laws of New York are *not* the same, and therefore the Court does not need to address the false conflict argument.

Restatement (Second) of Conflict of Laws Section 145, the General Principle states:

> (1)   The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2)   Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws Section 6, states:

> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Based on the allegations in the Complaint, Colombia is the jurisdiction affected by Estraval's fraud. Estraval manipulated and falsified *libranzas*, which were Colombian negotiable instruments taken out by Colombian pensioners and Colombian government employees. (Compl. ¶10.) The *Superintendency's* investigation into Estraval revealed that the company had perpetuated a

financial fraud on the Colombian public. (*Id.* ¶24.) Estraval was incorporated under Colombian law and had done business in Colombia for 16 years before it was forced into liquidation. (*Id.* ¶8.) Deutsche Bank invested in Colombia. (*Id.* ¶52.) Estraval's fraudulent scheme led to Mr. Mondragon being apprehended by Colombian authorities and being charged under the Colombian Penal Code. (*Id.* ¶¶15, 18-19.)

Having considered the significant relationship test under the Restatement (Second) of Conflict of Laws, the Court holds that Colombian law applies to Counts I-III.[14]

### B.   Counts I-III and VI Fail to State a Claim Under Colombian Law

The Defendant argues that Counts I-III and VI fail to state a claim because Colombia does not recognize civil aiding and abetting claims against a corporation.[15] The Defendant cites the Romero Decl. (ECF #15-1), which explains that the comparable Colombian legal institution is the Administrators' Liability Regime under Law 222 of 1995 ("Law 222"). (*See* Romero Decl. ¶23.) Under Law 222, "administrators" are jointly and severally liable to the company, its shareholders, or third parties for damages caused by their willful misconduct. (*Id.* ¶24.) But only certain persons, such as legal representatives and board members, can be an administrator of a company under Law 222. (*Id.* ¶27.) The Defendant is not alleged to be an "administrator" within the scope of Law 222. Further, Colombia does not recognize civil liability for a company, bank, or other entity assisting an administrator in violating his or her duties. (*Id.* ¶28.) The

---

[14] Count VI is expressly pleaded under Colombian law.
[15] Because the Court holds that the law of Colombia applies, the Court does not need to address the *in pari delicto* argument raised by the Defendant.

Case 20-01222-LMI   Doc 67   Filed 04/02/21   Page 20 of 24

Defendant also argues that Count VI, for aiding and abetting liability under the Colombian Penal Code, does not state a claim for several reasons, including that liability under the Colombian Penal Code only extends to individuals, not to entities.

The Plaintiff does not disagree. Plaintiff, however, presents an alternative theory for liability under the factual scenario. Relying on the Esguerra Opinion, Plaintiff contends that Colombia recognizes accomplice liability for aiding and abetting under Article 2341 of Colombia's Civil Code, which is a broad catch-all provision. (*See* Pl.'s Resp. ¶¶21-22 (ECF #47); Esguerra Opinion at 8-11 (ECF #47-1)).

However, the Plaintiff has not alleged a claim arising under Article 2341 in his Complaint. Thus, the Court does not need to determine whether the Complaint adequately alleges a cause of action under Article 2341, although the Plaintiff has requested the opportunity to amend the Complaint to do so.[16]

Accordingly, the Plaintiff's aiding and abetting claims fail under Colombian law and Counts I – II[17] and Count VI of the Complaint are dismissed.

## IV.   **The Unjust Enrichment Claim (Count IV)**

The Defendant asserts that Colombian law applies to the Plaintiff's unjust enrichment claim (Count IV), and such claim fails to state a claim under Colombian law. (*See* Def.'s Mot. to Dismiss at 16 (ECF #15); Romero Decl. ¶¶31-

---

[16] The Esguerra Opinion explains that a plaintiff must show that the damage is "true and personal" to state a claim under Article 2341 of the Colombian Civil Code. (*See* Esguerra Opinion at 9 (ECF #47-1); *see also* Romero Suppl. Decl. ¶¶12-18.) Thus, any amendment would need to overcome the allegations that any actions by the Defendant were at best am indirect cause of damage to the Estraval creditors.

[17] To the extent that the Court had not already dismissed Count III with prejudice on the basis of lack of authority, this Count would also be dismissed based on the fact that no cause of action exists under Colombian law.

34 (ECF #15-1)). After reviewing the laws of both New York and Colombia, the Court finds that a "false conflict" exists, that is, that the laws of New York and Colombia regarding unjust enrichment are substantially similar. Accordingly, the Court need not conduct a full conflict of laws analysis at this time.

### A.    Colombian Law

Under Colombian law, there are five elements to an unjust enrichment claim: (1) that an enrichment exists; (2) that there is a correlative impoverishment; (3) that the enrichment and impoverishment have occurred without legal cause; (4) that the plaintiff has no other available action to recover the property; and (5) the unjust enrichment action must not be intended to circumvent a mandatory provision of the law. (*See* Romero Decl. ¶33 (ECF #15-1)). As alleged by the Plaintiff, the purported unjust enrichment occurred by "repayment on the loan from monies generated by the *libranzas*." (*See* Compl. ¶92.) But the loan from the Defendant to Estraval is a legal cause for that repayment. It is also unclear how the Defendant was enriched if the Defendant also was a victim of the fraud. Plaintiff argued that Deutsche Bank was enriched by the *libranza* cash flows at the expense of the creditors. However, the Complaint does not allege that the *libranza* cash flows were redirected to Deutsche Bank instead of creditors.

### B.    New York Law

Plaintiff's unjust enrichment claim under New York law is also insufficient. To state a claim for unjust enrichment under New York law, a plaintiff must establish that: "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to

retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (2012). "The essence of a claim for unjust enrichment is that one party had parted with money or a benefit that has been received by another at the expense of the first party." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004). "[W]hile 'a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment,' there must exist a relationship or connection between the parties that is not 'too attenuated.'" *Georgia Malone*, 973 N.E.2d at 746.

Here, the Plaintiff's unjust enrichment claim fails to state a claim under New York law for two reasons. First, the Complaint fails to allege a specific and direct benefit conferred upon the Defendant that belonged to anyone else. Although the Defendant received partial repayment before the fraud unraveled, the Plaintiff has alleged that the Defendant was not enriched, but was instead a victim of Mr. Mondragon's fraud. (Compl. ¶118.) Second, the relationship between the parties, as noted in *Bazak Int'l Corp.*, is too attenuated for there to be a cognizable unjust enrichment claim. There is not alleged to be any relationship between the Defendant and Estraval's unidentified, and as of now, unknown, creditors. They were strangers to each other, which does not satisfy the requirements of New York law.

Thus, either under the laws of Colombia or of New York, the unjust enrichment claim fails and if not already dismissed due to lack of authority, Count IV would be dismissed for failure to adequately state a cause of action. The Plaintiff argues that the unjust enrichment claim can be amended to allege that Deutsche Bank received payments from the liquidation of *libranzas* that

could have gone to other creditors.  But, even assuming these claims could be pleaded with sufficient specificity to overcome the speculation issues already discussed above, it is clear that any such claims would belong only to those particular creditors whose payments were actually allegedly diverted.[18]

Therefore, the Plaintiff's unjust enrichment claim (Count IV) is dismissed with prejudice.

## V.   __The Disgorgement Claim (Count VII)__

The Defendant argues that the Plaintiff's disgorgement claim (Count VII) fails under either Colombian or New York law, as both jurisdictions recognize that disgorgement is a remedy and not an independent cause of action. (*See* Def.'s Mot. to Dismiss at 19 (ECF #15); Romero Decl. ¶¶35-36 (ECF #15-1)). Plaintiff's response in opposition does not address the Defendant's argument. (*See* Pl.'s Resp. at 10 n.9 (ECF #47)). Plaintiff has therefore abandoned his disgorgement claim. *See Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and hereby dismissed.").

Therefore, the Plaintiff's disgorgement claim (Count VII) is dismissed with prejudice.

---

[18] Plaintiff's counsel conceded at oral argument that the unjust enrichment claim was being brought on behalf of creditors, "and it's their damage[s] that we're seeking." *See* Tr. of 9/29/2020 Hearing at 25 (ECF #56).

## **CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is GRANTED with respect to Counts I-IV and VI-VII and these Counts are DISMISSED. Counts III, IV and VII are dismissed *with prejudice*. The Motion to Dismiss is otherwise DENIED. The Plaintiff will be given one opportunity to amend Counts I - II and Count VI and shall file an Amended Complaint no later than 30 days from the date of this Order. The Defendant than shall have 14 days to file its response to the Amended Complaint.

###

Copies furnished to:

Justin W. Dixon, Esq.
Frank Morreale, Esq.

Andres Rivero, Esq.
Charles Whorton, Esq.
David DaPonte, Esq.

Luis Salazar, Esq.
Jose Ceide, Esq.

*Attorney Morreale is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*